## FENWICK'S Adm'r. vs. FORREST.

APPEAL from *Saint Mary's* county court. This is the same case reported in 5 *Harr. & Johns.* 414, and sent back dian of the children of the deceased, in an action against such guardian by a third person

In an action of covenant by A against B, on B's warranty to defend certain slaves sold by him to A, parol evidence is admissible to prove a paramount title in another person to such slaves

Where no objection is taken to the sufficiency of evidence offered at the trial, the court will not instruct the jury as to the sufficiency of such evidence to prove a particular fact

An executor is a competent witness to prove transactions between himself and the guardian

to the county court for a new trial under a writ of *pro-cedendo.*

1. At the new trial in the county court, the plaintiff, (now appellee,) read in evidence the articles of agreement, and the record from *Baltimore* county court; which were given in evidence on the former trial, and then gave in evidence, that the negroes, in the articles of agreement mentioned, were the descendants of a negro woman called *Sall,* once the property of *Nicholas Sewall.* That the said *Sewall,* sometime between 1800 and 1803, informed the witness, that after *Sall's* intermarriage with *David Sommerville,* he agreed that she should attend her husband to *Baltimore,* and that if he would pay him, after a certain time which the deponent did not now recollect, a sum of money, the amount whereof the deponent does not recollect, that *Sall* should be the property of her husband. That *Sall* left the said *Sewall's* house, and went to *Baltimore* with her husband. The plaintiff then gave evidence, that between 1809 and 1813, *David Sommerville,* and *Nicholas Sewall* in his life time, had an interview, in which *Sommerville* expressed his fears that his wife might be interfered with as a slave and runaway; and that it was then understood between the said *Sommerville* and *Sewall,* that the contract, in relation to the said negro woman, was affirmed, in consideration of having raised two children which he was either to send home, or had sent home, to the said *Sewall,* and a sum of money which was then paid. The defendant then gave in evidence, that the said negroes, in the agreement mentioned, were paid over by *Raphael Neale* and *Lewis Ford,* executors of *Nicholas Sewall,* to the defendant as guardian to the children of the said *Nicholas Sewall.* Whereupon the plaintiff offered to give evidence by *Raphael Neale,* one of the executors as aforesaid; to the competency of which witness to give evidence the defendant objected; but the court, [*Stephen,* Ch. J.] would not sustain the said objection, but was of opinion that the said witness was competent to give evidence, and did permit him to give evidence. The defendant excepted.

2. The plaintiff then proved by *Thomas Lynch,* a witness sworn on his part, that between the first and the tenth of May 1817, six negroes were brought on board his vessel lying at *Baltimore,* and were brought by him to the house of the defendant, and delivered to him, and claimed

1825.

Fenwick
vs
Forrest

by him as his property; that he afterwards heard the defendant say, that some of those negroes were in dispute in *Baltimore*, and that the plaintiff was concerned. He then gave in evidence, by *Peter Gough*, that the defendant informed him that he was present at a conversation between Gen. *Winder* and the plaintiff in August 1817, in which the plaintiff instructed Gen. *Winder*, who had appeared as counsel in the action of replevin before mentioned, that he would not authorise him any longer to appear at his instance and request to defend the said writ. By consent of the parties, a record of the proceedings in the court of appeals, on the former appeal, was given in evidence.

The jury then retired, and after some time engaged, caused the following paper to be transmitted to the court. "The jury will thank the honourable court to instruct them which of the parties was legally bound to defend the suit of replevin of *Sommerville vs. Fenwick* in the record mentioned." Whereupon the court, [*Stephen*, Ch. J. and *Plater*, A. J.] by consent of counsel engaged in the cause, ordered the jury to the box, and gave them the following direction and instruction: That the plaintiff in this cause not being a party to the action of replevin, in the said record mentioned, could not defend said action, and was not bound to do so. That *Fenwick*, the defendant in the said action of replevin, and the defendant in this cause, was not bound to defend the said action of replevin, unless he thought fit, but if he did not defend the same, he would be liable to the plaintiff in this action, if the plaintiff prove a paramount title in the plaintiff in the said action of replevin, by parol or other evidence. The defendant excepted; and the verdict and judgment being against him, he appealed to this court.

The appellant having died after the appeal, his administrator appeared. The cause was argued before BUCHANAN, Ch. J. EARLE, MARTIN, and ARCHER, J. by

*Causin* and *F. S. Key*, for the Appellant, and by

*Magruder* and *Taney*, for the Appellee.

MARTIN, J. delivered the opinion of the court. This action was founded on a covenant, by which the defendant warrants and defends the negroes mentioned in it, against all persons whatsoever, to be the property of the plaintiff; and the breach assigned is, that they were the property of

one *Sommerville*, who dispossessed the plaintiff of them. In a former trial of this case in 1822, this court decided that the plaintiff might sustain his action, by proving a paramount title to the negroes in *Sommerville*, and that fact might be established, either by a recovery in a court of law, or by any other written or parol evidence. In the second trial the same testimony was offered to the jury that had been submitted to them in the first, and also additional parol evidence, intended to show a paramount title in *Sommerville*. No objection whatever was made by the defendant to the competency of this evidence, (except that given by *R. Neale*,) nor was any prayer preferred to the court upon its sufficiency to sustain the action. After the jury had retired, a difficulty occurred to them; and by the consent of the parties they returned to receive the instruction of the court. The question propounded by the jury was, who was bound to defend the replevin in *Baltimore* county court? The court directed them, that neither the plaintiff nor defendant was bound by law to defend that suit, but that the plaintiff was not confined to that testimony alone, to sustain his action. If he could prove a paramount title in *Sommerville*, by any other evidence, written or parol, it was sufficient. We see no error in this instruction, it is in substance, if not literally the law, as declared by this court in the first trial in 1822.

It has been contended, that the evidence submitted to the jury was not sufficient to prove a paramount title in *Sommerville*, and it was error in the court that they did not so instruct them. No objection was offered to its sufficiency at the trial. Had an application been made to the court upon that question, then, and then *only*, was it their duty to act upon it.

The bill of exceptions appeared to be almost abandoned in the argument. The record certainly does not afford proof to prevent *R. Neale* from being a competent witness.

JUDGMENT AFFIRMED.